MYRON A. ANDERSON AND MILDRED H. ANDERSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1451-68. Filed May 20, 1970.

*Leland E. Fiske,* for the petitioners.
*Harold L. Cook,* for the respondent.

OPINION

The petitioners were the owners of fractional interests in three separate oil and gas leases on which wells were drilled and equipped in the calendar year 1966. In order to finance their share of the cost in equipping the wells, the petitioners joined in the sale of a production payment from such leases subject to the pledge that the amounts realized would be used to equip the wells.

In their return for the calendar year 1966, the petitioners claimed investment credit in the amount of $905 under section 46 of the investment code on account of their allocable share of the cost of the equipment placed in service in that year. Insofar as material, section 46 provides as follows:

SEC. 46. AMOUNT OF CREDIT.

  (a) DETERMINATION OF AMOUNT.—

    (1) GENERAL RULE.—The amount of the credit allowed by section 38 for the taxable year shall be equal to 7 percent of the qualified investment (as defined in subsection (c)).

     \*       \*       \*       \*       \*       \*       \*

(c) QUALIFIED INVESTMENT.—

(1) IN GENERAL.—For purposes of this subpart, the term "qualified investment" means, with respect to any taxable year, the aggregate of—

(A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year, plus

(B) the applicable percentage of the cost of each used section 38 property (as defined in section 48(c)(1)) placed in service by the taxpayer during such taxable year.

The law with respect to the assignment of a production payment to finance the cost of equipping an oil or gas well is not subject to dispute. Such an assignment, while termed a "sale" of a production payment, under the peculiar laws applicable to oil and gas interests does not result in the realization of any income by the seller. The cash received is treated as a contribution by the assignee to the common pool of investment in exchange for an interest in the property, which in turn reduces both the interest and the development or completion costs of the assignor. At the same time, the assignor's interest in the equipment purchased with the restricted funds has a "zero" tax basis. See G.C.M. 22730, 1941–1 C.B. 214; G.C.M. 24849, 1946–1 C.B. 66; and Breeding & Burton, Income Taxation of Oil and Gas Production, par. 7.03 (P–H. 1968).

The parties thus agree that for tax purposes the petitioner had no recoverable "basis" or "cost" in the equipment on account of which the petitioner claims an investment credit. Because of this, the petitioner was not entitled to claim depreciation on account of that equipment. Since the equipment was not depreciable in the hands of the petitioner, the respondent concludes that the equipment did not meet the definition of "section 38 property." The respondent relies on the limitation of section 38 property appearing in section 48(a)(1), which is as follows:

Such term [section 38 property] includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.

As interpreted by respondent's regulations, the requirement that section 38 property be "property with respect to which depreciation * * * is allowable" is further modified by the addition of the requirement that such depreciation must be allowable to the taxpayer. Sec. 1.48–1(a) and (b), Income Tax Regs. Insofar as material, the regulations provide:

(a) *In general.* Property which qualifies for the credit allowed by section 38 is known as "section 38 property". Except as otherwise provided in this section, the term "section 38 property" means property (1) with respect to which depreciation (or amortization in lieu of depreciation) is allowable to the taxpayer * * *

(b) *Depreciation allowable.* (1) Property is not section 38 property unless a deduction for depreciation (or amortization in lieu of depreciation) with respect to such property is allowable to the taxpayer for the taxable year. A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation, including, for example, the unit of production method and the retirement method as well as methods of depreciation which measure the life of the property in terms of years. * * *

(2) If, for the taxable year in which property is placed in service, a deduction for depreciation is allowable to the taxpayer only with respect to a part of such property, then only the proportionate part of the property with respect to which such deduction is allowable qualifies as section 38 property for the purpose of determining the amount of credit allowable under section 38. * * *

(3) If the cost of property is not recovered through a method of depreciation but through a deduction of the full cost in one taxable year for purposes of subparagraph (1) of this paragraph a deduction for depreciation with respect to such property is not allowable to the taxpayer. However, if an adjustment with respect to the income tax return for such taxable year requires the cost of such property to be recovered through a method of depreciation, a deduction for depreciation will be considered as allowable to the taxpayer.

The petitioners argue that the regulations are contrary to the statute and should not be followed by this Court.

We do not believe that it is necessary to rely on respondent's regulations. While we reach the same result, the requirement that the petitioners have a tax basis or cost in the property stems, in our opinion, not from the definition of section 38 property but from provisions relating to the determination of the amount of the credit. Any depreciable property which otherwise meets the tests in section 48(a) would come within the broad definition of section 38 property.[2] However, unless the taxpayer also has a tax basis or cost in the property—an essential element for the allowance of depreciation—whatever might be the taxpayer's interest in that property, an essential element for the allowance of the investment credit is also lacking. In this respect, the regulations are consistent with the statute.

Section 46(a)(1) provides that the credit shall be 7 percent of "the qualified investment" as defined in subsection (c). Section 46(c)(1)

---

[2] Sec. 48(a)(1) provides in part:

(a) SECTION 38 PROPERTY.—

(1) IN GENERAL.—Except as provided in this subsection, the term "section 38 property" means—

    (A) tangible personal property, or

    (B) other tangible property (not including a building and its structural components) but only if such property—

        (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or

\*     \*     \*     \*     \*     \*     \*

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.

defines "qualified investment" as the applicable percentage of the "basis" for new section 38 property and the applicable percentage of the "cost" for used section 38 property. Subsection (c) (2) sets forth the applicable percentages to be applied to the basis or cost of the property in order to determine the proportion thereof which comes within the definition of "qualified investment." [3] In explanation of the "basis" and "cost" to be used in determining the amount of the credit, the report of the Committee on Ways and Means states:

The basis of "new section 38 property" is to be determined under the general rules for determining the basis of property. Thus, the basis of property purchased or constructed would generally be its cost. If property is acquired in a nontaxable exchange to which section 1031 applies by trading in old property and paying a cash difference, the basis of the newly acquired property would be equal to the adjusted basis of the old property, plus the cash paid.

The cost of each "used section 38 property" is to be determined in accordance with section 48(c) (3) (B). However, the aggregate cost of used section 38 property which may be taken into account in any taxable year in computing qualified investment cannot exceed $50,000. (See sec. 48(c) (2).)

Without a basis in the property, there could be no "qualified investment." Applying the multiplier in section 46(c) (2) would produce a "zero" investment credit. It is thus clear that, as a prerequisite to the allowance of an investment credit, the taxpayer must have some "basis" or "cost," just as the taxpayer must have a "basis" or "cost" for purposes of obtaining a depreciation allowance.[4]

Any different interpretation of the statute would clearly be contrary to congressional intent. When the bill was originally enacted providing for an investment credit, the taxpayer's basis was reduced by the amount of the credit. Section 48(g) provides: [5]

(g) ADJUSTMENTS TO BASIS OF PROPERTY.—

(1) IN GENERAL.—The basis of any section 38 property shall be reduced, for purposes of this subtitle other than this subpart, by an amount equal to 7 percent of the qualified investment as determined under section 46(c) with respect to such property.

(2) CERTAIN DISPOSITIONS, ETC.—If the tax under this chapter is increased for any taxable year under paragraph (1) or (2) of section 47(a) or an adjustment in carrybacks or carryovers is made under paragraph (3) of such section,

---

[3] Sec. 46(c) (2) provides:

(2) APPLICABLE PERCENTAGE.—For purposes of paragraph (1), the applicable percentage for any property shall be determined under the following table:

| If the useful life is— | The applicable percentage is— |
| --- | --- |
| 4 years or more but less than 6 years | 33⅓ |
| 6 years or more but less than 8 years | 66⅔ |
| 8 years or more | 100 |

For purposes of this paragraph, the useful life of any property shall be determined as of the time such property is placed in service by the taxpayer.

[4] An exception to this rule was provided for leased property in sec. 48(d).

[5] Sec. 2, Pub. L. 87–834 (Oct. 19, 1962).

the basis of the poperty described in such paragraph (1) or (2), as the case may be (immediately before the event on account of which such paragraph (1), (2), or (3) applies), shall be increased by an amount equal to the portion of such increase and the portion of such adjustment attributable to such property.

This provision of the bill was added by the Committee on Finance of the Senate. In explanation of the addition, the committee said: [6]

7. *Downward adjustment in basis of property.*—The bill as amended by your committee provides (sec. 48(g)) that the cost or other basis of "section 38 property" is to be reduced by 7 percent of the qualified investment except for purposes of computing the credit itself. As previously indicated, this downward adjustment is provided because your committee believes that there is no reason to allow the taxpayer depreciation with respect to the portion of the investment in effect paid for by the Government.

The bill provides that the basis of all qualified investments is to be reduced by 7 percent. Since "qualified investment" is after adjustment for different estimated lives (and also after the special adjustment where the property involved is public utility property) the uniform 7-percent downward adjustment provides the appropriate result in most cases. However, there are cases where this adjustment may be too large. This is true, for example, where because of the limitation to 25 percent of tax liability, not all of the credit is used in the taxable year, 3 years to which the credit may be carried back and 5 years to which it may be carried forward. To compensate for this overadjustment the bill provides taxpayers with a special deduction in computing taxable income in the first year after all carryforwords [sic] for a credit have expired, equal in amount to any unused portion of the credit. If the taxpayer dies or ceases to exist prior to that time this special deduction (or appropriate portion of it) is allowed the taxpayer in his last year.

A second circumstance under which the downward adjustment referred to here may be too great is that where a property is disposed of before its full estimated life has expired and in less than 8 years. In such cases the investment credit is cut back under the recapture rule explained in the prior section with the result that the original adjustment to the basis of the property was too large. To the extent of this cutback in the investment credit, the bill provides for an increase in the basis of the property at the time just preceding its disposition.

The explanation by the committee of the reasons for adding section 48 (g) makes it clear that, since the investment credit was to be treated as a return of "basis," the taxpayer must start out with some "basis" which is cognizable for tax purposes.

From this, we believe, it is clear that the same committee would not have permitted a taxpayer to claim an investment credit for property in which that taxpayer had a "zero" basis. Otherwise, in the case of the "downward adjustment" referred to by the committee, a taxpayer might acquire a "basis" in the event of the early disposition of the property where he had none before.

While it might be argued that as a result of the repeal of section 48 (g) [7] there no longer is any reason for denying the credit where the

---

[6] S. Rept. No. 1881, 87th Cong., 2d Sess., p. 19.
[7] Sec. 203(a) (1), Pub. L. 88–272.

taxpayer had no basis for the property, reports of the committees accompanying repeal of that section would tend to confirm the opposite conclusion. In recommending repeal of section 48(g), the Ways and Means Committee and the Finance Committee both stated that their action was taken to provide a greater stimulus to investment and to facilitate "record keeping." [8] The committees were thus proceeding on the assumption that there would be an investment in fact on the part of the taxpayer claiming the credit.

For the reasons stated, it is decided that the petitioners are not entitled to any investment credit on account of the equipment purchased with pledged funds from the sale of a production payment.

*Decision will be entered for the respondent.*

---

[8] H. Rept. No. 749, 88th Cong., 1st Sess., p. 34; S. Rept. No. 830, 88th Cong., Sess., p. 40.

