EMERSON EMORY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Emory v. Commissioner
Docket No. 1330-71.
United States Tax Court
T.C. Memo 1973-55; 1973 Tax Ct. Memo LEXIS 233; 32 T.C.M. (CCH) 245; T.C.M. (RIA) 73055; March 5, 1973, Filed *233 The petitioner, a psychiatric resident, received stipends from the Terrell State Hospital during the period of his residency. The stipends granted to the petitioner represent compensation for present or future services that were subject to the direction or supervision of the grantor. Held, the stipends are not excludable scholarships or fellowship grants. Sec. 117(a), I.R.C. 1954. Emerson Emory, pro se. John W. Dierker, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1968 and 1969 in the amounts 2 of $981.28 and $983.91, respectively. The issue is whether the petitioner is entitled to exclude $3,600 from his gross income in 1968 and $2,700 from his gross income in 1968 and $2,700 from his gross *234 income in 1969 as fellowship or scholarship grants under section 117[1] while he was a resident in psychiatry at various medical institutions. FINDINGS OF FACT Petitioner Emerson Emory (hereinafter called petitioner) was a legal resident of Dallas, Texas, when he filed his petition. He filed his individual income tax returns for 1968 and 1969 with the district director of internal revenue in Dallas, Texas. Petitioner was a resident physician specializing in psychiatry during the years at issue. He was assigned to the Parkland Memorial Hospital for the first nine months of 1968. For the last three months of 1968, he was assigned to the Community Services Outpatient Clinic at Southwestern Medical School. Petitioner was assigned to the Children's Clinic of Southwestern Medical School for the first six months of 1969. He also performed duties in the emergency room at Parkland Memorial Hospital during this period. During the third quarter of 1969, he was assigned to the Community Clinic at San Mateo, California, for two weeks; to the *235 clinic at Southern Methodist University for one month; and to the South Dallas District Six Clinic for one month. He was on vacation for the remaining two weeks of the quarter. 3 Petitioner entered into a residency training program in psychiatry with Terrell State Hospital in 1966. The residency was part of an interagency agreement between Terrell State Hospital, Southwestern Medical School, Parkland Memorial Hospital, and the Veterans Administration Hospital, whereby residents are assigned to one or another of these institutions during the period of residency with reciprocal services being rendered to each agency. In consideration for acceptance of petitioner in the residency program, he was required to agree to future post residency employment for a period of two years at Terrell State Hospital. Petitioner completed 10 months of this commitment after his 3-year residency was finished in 1969. The employment commitment was not enforced beyond this 10-month period because Terrell State Hospital no longer desired to continue his services. The purpose of Terrell State Hospital is to give services to mentally ill patients and all such patients must be admitted. The objective *236 of Terrell State Hospital is to insure that all patients admitted receive the best medical care and treatment including psychiatric care and are returned to their homes in the shortest time. The purpose of Parkland Memorial Hospital is to render care, including psychiatric care, to the indigent population of Dallas County. All such patients must be admitted. The psychiatry department of Parkland Memorial Hospital relies almost exclusively upon residents to treat patients. The use of residents increases 4 the quality of patient care at Parkland Memorial Hospital. Petitioner had a nonremunerative contract with Parkland Memorial Hospital during the years in issue. Petitioner's duties consisted of making histories of patients, doing physical examinations, prescribing treatments for the patients, prescribing and administering drugs, and under certain circumstances admitting patients to the hospital. During the years in issue, petitioner was paid by Southwestern Medical School from funds advanced by Terrell State Hospital through the interagency agreement. Federal income tax was withheld from the amounts petitioner received. All amounts paid to petitioner under the interagency *237 agreement represented compensation for either present or future services, and subject to the direction or supervision of the respective institutions. OPINION The issue involved in this case is whether the petitioner is entitled to exclude certain stipends from his gross income for 1968 and 1969 as fellowship or scholarship grants under section 117. This Court has considered this issue with regard to the petitioner for other tax years and held that such stipends are not excludable. [2] 5 Section 117 excludes from gross income any amount received as a scholarship or fellowship grant. For individuals who are not candidates for a degree, such exclusion is limited to $300 per month for each month during the taxable year that the recipient received amounts under the scholarship or fellowship grant. Section 1.117-4(c) of the Income Tax Regulations provides that the following payments or allowances shall not be considered to be amounts received as scholarship or fellowship grants for the purpose of section 117: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. - (1) Except as *238 provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. * * * The validity of these regulations has been upheld by the Supreme Court of the United States. Bingler v. Johnson, 394 U.S. 741 (1969). 6 The evidence in this *239 record establishes that the stipends paid to the petitioner represent compensation for present or future services that were subject to the direction or supervision of the grantor. Dr. Asa W. DeLoach, Interim Chairman of the Department of Psychiatry with the Southwestern Medical School and supervisor of the psychiatric program at Parkland Memorial Hospital, testified that, from the viewpoint of Parkland Memorial Hospital and the Southwestern Medical School, petitioner performed services. He also testified that Parkland Memorial Hospital relied heavily on residents in order to provide patient care. Thus, the petitioner provided present services to the medical institutions involved during the period in which he received the stipends in issue. The petitioner also agreed to future post-residency employment for a period of two years at the Terrell State Hospital after completion of his residency, as a condition of acceptance in the training program. Thus, petitioner was being compensated for the performance of future services to the Terrell State Hospital. Leonard T. Fielding, 57 T.C. 761 (1972). When the primary purpose of paying the resident is for patient care or other *240 services rendered to the hospital, the exclusion is not allowed. Aloysius J. Proskey, 51 T.C. 918 (1969). 7 Petitioner contends that the stipends are not includable in gross income because he did not perform services for the grantor, Terrell State Hospital. We are unable to accept petitioner's contention. Petitioner worked at the various medical institutions during 1968 and 1969 under the interagency agreement between Southwestern Medical School, Terrell State Hospital, and Parkland Memorial Hospital. The agreement was entered into by Terrell State Hospital for "the purpose of improving the treatment afforded mental patients" at the hospital. All of the services performed by the petitioner were for the benefit of the Terrell State Hospital because petitioner's broadened experiences would improve the quality of patient care at that hospital upon his return to fulfill his 2-year employment contract. Thus, petitioner's performance of services during the years at issue for compensation paid by Terrell State Hospital was in consideration of future services to be performed. Also, since Terrell State Hospital, Parkland Memorial Hospital, and Southwestern Medical School *241 were engaged in a joint and cooperative effort in connection with petitioner's residency, each institution may be viewed as an employer of the petitioner and grantor of the stipends. Jerry S. Turem, 54 T.C. 1494 (1970), and Marjorie E. Haley, 54 T.C. 642 (1970). Thus, although petitioner did not perform services directly for Terrell State Hospital, that does not change the nature of the stipends as being compensation for present or future services. 8 Petitioner and Dr. DeLoach both testified that petitioner was at all times during this period subject to the supervision and direction of the various medical institutions involved. The stipends therefore represent payments for services which are subject to the direction or supervision of the grantor. Petitioner contends that he entered, and viewed, the residency program as an educational endeavor. To bolster this contention, petitioner testified that he received less money than would have been paid to full time employees and that he personally could have been employed in the same institutions at a considerably higher salary. There can be little doubt that the petitioner received valuable educational training *242 during the period of his residency. That, however, does not alter the fact that he received compensation for services rendered. Although the compensation received for services was less than might otherwise have been expected, that likewise does not alter the overriding fact that petitioner was being compensated for substantial services rendered. Kwass v. United States, 319 F. Supp. 186 (E.D. Mich. 1970). The petitioner further contends that the residency program is an educational program because it would qualify for the award of educational assistance benefits by the Veterans Administration. Although the residency program would be considered educational 9 for purposes of Veterans benefits, that does not change the character of the services performed. Compensation received for services is not converted into a scholarship or fellowship grant because the recipient in rendering such services simultaneously receives training qualifying for assistance from the Veterans Administration. We hold that the petitioner is not entitled to exclusions of $3,600 for 1968 and $2,700 for 1969 as scholarship or fellowship grants. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. ↩
2. Emerson Emory, T.C. Memo. 1971-191↩.