GEORGE A. FISHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fisher v. Commissioner
Docket No. 6086-72.
United States Tax Court
T.C. Memo 1974-179; 1974 Tax Ct. Memo LEXIS 140; 33 T.C.M. (CCH) 771; T.C.M. (RIA) 74179; July 1, 1974, Filed. George A. Fisher, pro se. Leo A. Reinikka, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in the Federal joint income tax return of the petitioner for the taxable years 1965, 1966, and 1967 in the amounts of $166.64, $522.40, and $490.78, respectively. The sole question for our determination is whether the petitioner is entitled to exclude from gross income, pursuant to section 117, [1] certain payments received during 1965, 1966, and 1967 from the Oregon State Public Welfare Commission. FINDINGS OF FACT Some of the facts have been stipulated by the parties. *141 Such facts and exhibits attached thereto are incorporated herein by this reference. Petitioner George A. Fisher was a resident of Gresham, Oregon, at the time his petition was filed. Petitioner and his wife filed timely joint Federal income tax returns on the cash method of accounting for the taxable years 1965, 1966, and 1967. During 1965 and in earlier years, the petitioner was employed at the MacLaren School for Boys (hereinafter referred to as "MacLaren") at Woodburn, Oregon, as a field counselor ("parole officer"). The petitioner served in this capacity until the last quarter of 1965, at which time he commenced study for a master's degree in social work at Portland State College in Portland, Oregon. In 1964 and 1965, the Oregon State Public Welfare Commission made available to certain staff members of state welfare and social service agencies (including MacLaren) "Child Welfare Services Grants" for graduate study in social work. The purpose of the grants, as stated in an announcement by the Oregon State Public Welfare Commission, was "to encourage and assist in increasing the number of trained social work personnel in the state in order to extend and strengthen services *142 to children known to public agencies." The grants were financed primarily from funds provided by the Department of Health, Education and Welfare under the Public Welfare Amendments Act of 1962.Pub. L. 87-543 (July 25, 1962). As a condition to being accepted into the Child Welfare Services Grant program, the employee of the state welfare or social service agency had to agree to work a minimum of 18 months in a public agency providing services to children in Oregon for each year of graduate study covered in the grant and to begin work within 1 month following completion of the school year. If he failed to complete the study on his own initiative or failed to carry out the agreement, the employee was under an obligation to refund the grant payments. In 1965, the petitioner received one of the training grants offered and in the autumn of that year, he resigned his position at MacLaren and began graduate study at Portland State College. By resigning, the petitioner lost many of his employee benefits that he had received at MacLaren, such as the right to accrue annual leave, to participate in the group insurance programs, and to continue his participation in the state's retirement *143 income program. The petitioner received $980.01 in grant funds in 1965, $3,846.38 in 1966, and $2,906.37 in 1967. Such amounts were subject to the withholding of Oregon State income taxes, Federal income taxes, and FICA taxes. On his 1965, 1966, and 1967 returns, the petitioner excluded these amounts, respectively. Following completion of his studies in 1967, there were no positions available at MacLaren for the petitioner. He subsequently applied for and accepted a position with the Oregon State Department of Public Welfare in compliance with the provisions of the grants. OPINION Section 117(a) excludes from gross income any amount received as a scholarship at an educational institution or as a fellowship grant. The term "scholarship" is defined by section 1.117-3(a), Income Tax Regs., as "an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." "Fellowship grant" is described in similar language. Section 1.117-4(c), Income Tax Regs., provides that the following payments shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose *144 of section 117: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish *145 reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant. These regulations have been held to conform to the statutory purpose and to comport with "the ordinary understanding of "scholarships' and "fellowships' as relatively disinterested, "no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson, 394 U.S. 741, 751 (1969). The regulations are "designed * * * to distinguish relatively disinterested payments made primarily for the purpose of furthering the education of the recipient from payments made primarily to reward or induce the recipient's performance of services for the benefit of the payor." Jerry S. Turem, 54 T.C. 1494, 1505 (1970); cf. Elmer L. Reese, Jr., 45 T.C. 407 (1966), affd. 373 F.2d 742 (C.A. 4, 1967). The respondent contends that the payments here in issue were both "compensation for * * * employment services" and payments made to enable *146 petitioner "to pursue studies or research primarily for the benefit of the grantor" and therefore the payments were not excludable from the petitioner's gross income. We agree. In Ussery v. United States, 296 F.2d 582 (C.A. 5, 1961), the court stated that the fact the taxpayer had obligated himself to return to work for the Mississippi Department of Public Welfare for at least a year or to return the employer's investment in his education was a clear indication that the grant program was designed to train the grantor's employees so they could perform their duties more effectively. The fact of a continuing employment relationship between the grantor and the taxpayer is sufficient "indicia" of compensation to find that the grant was in payment of past and future services. Stewart v. United States, 363 F.2d 355 (C.A. 6, 1966). On facts nearly identical to the present case, this Court in Marjorie E. Haley, 54 T.C. 642 (1970), relying on Johnson held that amounts received by the petitioner from the Oregon State Public Welfare Commission, while she was on educational leave, were not excludable from the petitioner's gross income as either scholarships *147 or fellowships since she was obligated, in consideration of the grant, to accept a position assigned by the State Commission in public welfare within the State Commission or in a county public welfare department. In that case, the petitioner was employed by the Jackson County Public Welfare Department before the leave and the Marion County Welfare Department after the leave. The petitioner's main contention is that he did not receive these payments from his employer (MacLaren), that there was no continuing relationship, and, hence, that these payments were not primarily for the benefit of the grantor. The Haley case is dispositive of this issue. There this Court concluded that the state was the "grantor" and that because of the relationship between the county and state boards in the Oregon State welfare system the stipends were "primarily for the benefit of the grantor" as defined in section 1.117-4, Income Tax Regs. Thus, because of the obligation to return to work either for the state or through the direction of the state, there was a continuing relationship. The fact that a number of employment benefits were lost on the petitioner's resignation from MacLaren, while a factor *148 to be taken into account, is not of significant importance by itself to justify a finding of a break in the continuing relationship. Grants made by a state agency for the purpose of training personnel to carry out the basic objectives of the agency are not the type of "no-strings" educational grants that section 117 is designed to exclude from gross income. Payments such as these are made primarily for the benefit of the state agency and as such are taxable. Jerry S. Turem, supra.
In accordance with the above, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩