**Lowell D. WARD and Suzanne M. Ward,**
**Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 71–1089.

United States Court of Appeals,
Eighth Circuit.

Oct. 15, 1971.

---

Llewellyn H. Linde, Hastings, Minn., for appellants.

Issie L. Jenkins, Atty., Tax Div., Dept. of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Wesley J. Filer, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

PER CURIAM.

Taxpayer Lowell D. Ward[1] petitioned the Tax Court for a redetermination of an alleged deficiency in payment of income taxes for the calendar years 1964, 1965, and 1966. The Tax Court rejected his petition and sustained the Commissioner's initial determination of a deficiency. Lowell D. Ward v. Commissioner of Internal Revenue, 55 T.C. 308 (1970). Taxpayer prosecutes this appeal and presents the single question of whether payments which he received during the years in question from the Minnesota Department of Public Welfare under an employee-education program, constituted taxable income rather than a scholarship or fellowship grant excludable from gross income.

The record discloses that Ward, while working as a welfare field representative in the Minnesota Department of Public Welfare, applied for, and received, a stipend or scholarship to enable him to obtain a master's degree in child welfare. This educational qualification was desired by the Department of Public Welfare for those working as such field representatives. The grant, extending over two academic years, covered the period from September of 1964 to April of 1966, and paid the cost of Ward's tuition, plus an allowance of $500 per month for living expenses. Pursuant to state statute, Minnesota's Department of Public Welfare carried Ward in an "on leave" status for one year. Thereafter, Ward resigned and continued his college program in order to obtain his master's degree.

In connection with the award of the stipend, Ward and his employer entered into academic training agreements for each of the academic years in which Ward received assistance. Ward, as the applicant, agreed

to enter an accredited school and upon completion of the period of school work covered by such stipend to accept employment acceptable to the Department for a period of not less than one calendar year for each school year of education and training received under the Academic Training Program.

He further agreed to repay the educational stipend in the event of termination of the agreement at his request, or by the Department for cause.

Petitioner Ward contends that the payments here in question constituted a nontaxable scholarship program since (a) he had severed his employment relationship with the State under this program, and (b) that the academic training agreement represented a nonbinding memorandum of understanding rather than a contractual obligation. Petitioner's latter contention is based in part upon the fact that the State of Minnesota exercised its discretion in some cases not to enforce similar agreements against individuals who had participated in the program.

The Tax Court, in rejecting these arguments, stated in part:

We do not agree that the petitioner had severed all employment connec-

---

1. His wife Susan is joined as a nominal party since she executed a joint return with her husband.

tions with the Minnesota Department of Public Welfare. By definition, a leave of absence implies that the employee may be reinstated to the position which he occupied before his leave. Thus, for the first year, at least, petitioner remained an employee, to the extent that although he no longer accrued employment benefits, he did not forfeit any which he had accumulated. The second year of his absence was no different; again he could be and was, reinstated with full benefits. After petitioner had been awarded the educational stipend, there was never any serious possibility that the director of the civil service would refuse to reinstate him. The training agreement indicates that the department expected to benefit from its investment in petitioner. *See* Elmer L. Reese, Jr., 45 T.C. 407 (1966), affirmed per curiam, 373 F.2d 742 (C. A.4, 1967). Even assuming that petitioner was not an employee while he attended school, we fail to see why the regulations would not apply. Section 1.117–4(c) includes "compensation for * * * future employment services." Petitioner was under a "commitment to the grantor." Ussery v. United States, 296 F.2d 582, 587 (C.A.5, 1961)

We do not regard the training agreement as a nonlegal memorandum of understanding. Petitioner does not suggest that the agreement to perform or repay is legally unenforceable. While it was not the practice of the Minnesota Department of Public Welfare to bring suit for enforcement, that policy could have been changed if the rate of voluntary compliance had declined. [55 T.C. at 311]

The Tax Court concluded:

What we have, in essence, in this case is an agreement between petitioner and his employer, whereby the employer offered to pay for petitioner's education in return for petitioner's promise of future service. Petitioner must perform, or repay the money which he received. It is a clear case of compensation for future services, a quid pro quo. Sec. 1.117–4(c), Income Tax Regs., Bingler v. Johnson, *supra*. [55 T.C. at 311]

The evidence provides substantial support for the Tax Court's findings of fact. It has committed no error of law in applying the principles enunciated in Bingler v. Johnson, 394 U.S. 741, 89 S. Ct. 1439, 22 L.Ed.2d 695 (1969), as a basis for determining that the educational stipend in question constituted gross income to the taxpayer for the years in question.[2] In Quast v. United States, 428 F.2d 750 (8th Cir. 1970), we recently discussed the applicable statute, § 117 of the Internal Revenue Code of 1954, the supporting Treasury Regulations, § 1.117–4(c), and Bingler v. Johnson, *supra*. We are satisfied that the payments in question represented compensation for future employment services under the principles enunciated in Bingler v. Johnson, *supra*, and that the Tax Court correctly decided this case. We affirm on its opinion. No useful purpose would be served by additional discussion of applicable principles of law.

---

2. The Commissioner permitted the petitioner to deduct as a business expense tuition, books, supplies, travel, meals and lodging, and other expenses reasonably connected with the taxpayer's education.